IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-85-BR

| | |
|---|---|
| L.K., a minor, by and through his surrogate parent, Melissa Henderson, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| NORTH CAROLINA STATE BOARD OF EDUCATION and the NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND
RECOMMENDATION**

This case is before the court, in part, on the renewed motion (D.E. 62) by defendants North

Carolina State Board of Education ("State Board") and the North Carolina Department of Public

Instruction ("Department") (collectively, "defendants") to dismiss this action for lack of subject

matter jurisdiction based on plaintiff's purported lack of standing. As discussed below, the court

deems defendants' motion to have been brought pursuant to Fed. R. Civ. P. 12(b)(1). Defendants

did not file a memorandum in support of their motion, but rely on briefs they had previously

submitted (D.E. 10-1, 24, 31, 35). Plaintiff L.K., a minor, by and through his surrogate parent,

Melissa Henderson ("plaintiff" or "L.K."), filed a memorandum (D.E. 65) addressed, in part, to

opposing defendants' motion.

The case is also before the court on the issue of joinder of the Granville County Board of

Education ("Granville Board") as a defendant pursuant to Fed. R. Civ. P. 19(a), pursuant to an order

by the court for briefing on this issue (D.E. 57 at 6 ¶¶ 4, 5). Defendants filed a memorandum (D.E.

63) in support of the Granville Board's joinder. Plaintiff filed a memorandum opposing joinder

(D.E. 64) and devoted a portion of his memorandum (D.E. 65) otherwise addressing dismissal to

responding to defendants' joinder memorandum. The defendants' renewed motion and the issue of joinder were referred to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Minute Entry immediately before D.E. 72).

For the reasons set forth below, it will be recommended that defendants' dismissal motion be allowed as to plaintiff's claim four, but denied as to claims one and two. It will be further recommended that the Granville Board not be joined as a defendant.

## BACKGROUND

### I.    OVERVIEW OF IDEA

This case arises from the 2007 suspension of plaintiff, who is disabled, from a North Carolina public high school and the associated alleged violations of his rights under the federal Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. The IDEA establishes certain safeguards "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1); *see also* 34 C.F.R. pt. 300 (federal regulations under IDEA).[1]

The IDEA places on each state educational agency ("SEA") the responsibility to ensure that the state has policies and procedures that protect the rights afforded under the IDEA. *See* 20 U.S.C. § 1412(a)(11). An SEA is defined to include "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools." 20 U.S.C. § 1401(32). An SEA is distinguished under the IDEA from a local educational agency ("LEA"), which is defined to include a public board of education for administrative control of public

---

[1] The regulations dealing specifically with procedural safeguards under the IDEA are found at 34 C.F.R. § 300.500-.520.

2

elementary and secondary schools in a county or other specified locality. 20 U.S.C. § 1401(19)(A).

If a school proposes to suspend a disabled child for more than ten days, the IDEA requires that a so-called manifestation determination be made—that is, a determination whether the behavior upon which the suspension is based was a manifestation of the child's disability. *Id.* § 1415(k)(1)(E). The manifestation determination is made by the LEA involved, the child's parents, and relevant members of the team responsible for developing the individualized education program for the child ("IEP team"). *Id.* If the child's behavior is found to be a manifestation of the disability, the child must be returned to his school within a specified period (45 days under the circumstances presented here), *id.* § 1415(k)(1)(F)(iii), (G)(i), but if the behavior is not a manifestation of the disability, the student may be treated as any other student, *id.* § 1415(k)(1)(C).

The IDEA provides for either one or two levels of administrative appeal from the manifestation determination. The first tier is a due process hearing before a hearing officer. *Id.* § 1415(f)(1)(A), (k)(3)(A). It is to be expedited: it must be held within 20 days after the request for it and the decision is to be issued within 10 school days after it is held. *Id.* § 1415(k)(4)(B). If the due process hearing is conducted by the SEA, this hearing is the only level of administrative appeal and further appeal is to federal or state court. *Id.* § 1415(i)(2)(A). But if the due process hearing is conducted by the LEA, there is a second tier of administrative appeal, namely, an impartial review conducted by the SEA. *Id.* § 1415(g)(1), (2). Appeal after this review is made to federal or state court. *Id.* § 1415(i)(1)(B).

North Carolina law establishes a two-tiered administrative appeal process. The first-tier appeal is to an administrative law judge ("ALJ") with the North Carolina Office of Administrative Hearings. N.C. Gen. Stat. § 115C-109.6(a); *see also* N.C. Gen. Stat. §§ 7A-750 to -752 (providing

3

for Office of Administrative Hearings). The second-tier appeal is to a state review officer ("SRO") appointed by the State Board through the Department. *Id.* § 115C-109.9(a). Further appeal is to federal or state court. *Id.* § 115C-109.9(d).

The State Board and Department qualify both individually and collectively as SEAs within the meaning of the IDEA. *See* N.C. Gen. Stat. § 115C-12 ("The general supervision and administration of the free public school system shall be vested in the State Board of Education."); *id.* § 115C-21(a)(5) (providing that the Department is responsible for managing "all those matters relating to the supervision and administration of the public school system that the State Board delegates to the Superintendent of Public Instruction"); (Defs.' S.J. Resp. (D.E. 35) 4) (identifying defendants collectively as "the SEA"). The Granville Board is an LEA.

## II. FACTUAL BACKGROUND

The complaint alleges the following: Shortly after L.K. enrolled in a Granville County public high school, J.F. Webb School of Health and Life Sciences, the principal recommended in September 2007 that he be suspended for a year for bringing a razor to school and other conduct. (Compl. (D.E. 1-2) ¶¶ 14, 21). L.K. had been found to have multiple disabilities and to be subject to the IDEA. (*Id.* ¶¶ 7, 12, 13). Proceeding under the IDEA, the IEP team made the manifestation determination that L.K.'s behavior was not a manifestation of his disabilities and that the year-long suspension would be enforced. (*Id.* ¶¶ 22-26). A determination that L.K.'s conduct was a manifestation of his disabilities would have precluded the suspension. (*Id.* ¶ 23).

In accordance with the North Carolina statutes implementing the IDEA, plaintiff sought review of this manifestation determination at an expedited due process hearing conducted by an ALJ with the North Carolina Office of Administrative Hearings. (*Id.* ¶¶ 27-29). The ALJ reversed the

4

manifestation determination. (*Id.* ¶ 38). The Granville Board then invoked the second tier of appeal under North Carolina law, review by an SRO. (*Id.* ¶¶ 53, 59, 60). The SRO overruled the ALJ's decision and reinstated the manifestation determination upholding the suspension. (*Id.* ¶¶ 62, 69). At both tiers of the administrative appeal, plaintiff and the Granville Board were the only named parties. (*Id.* ¶¶ 31, 53).

Plaintiff appealed the SRO's decision to state Superior Court, naming the State Board and the Department, and not the Granville Board, as defendants. (*Id.* 1 & ¶¶ 9-10). Defendants removed the case to this court. (Notice of Removal (D.E. 1-4)).

## III.    PLAINTIFF'S CLAIMS

In his complaint, plaintiff alleges that the two-tier review procedure under North Carolina law violates the IDEA. (Compl. ¶¶ 53-58). He contends that the ALJ hearing constitutes a due process hearing conducted by the SEA within the meaning of the IDEA, it therefore is the only level of administrative appeal authorized by the IDEA, and the SRO review accordingly violates the IDEA.

Based on this contention, plaintiff alleges as his first three causes of action: (1) violation of L.K.'s purported right under the IDEA to a final state-level manifestation determination on an expedited basis (the SRO review not coming until well after the expedited deadlines); (2) violation of L.K.'s purported right to have been returned to L.K.'s school and not to have been suspended pursuant to the ALJ's ruling as the final administrative decision; and (3) L.K.'s purported entitlement to a declaratory judgment that the second tier of appeal under North Carolina law violates the IDEA. (*Id.* ¶¶ 70-79).

5

As his fourth claim, plaintiff alleges application by the SRO of an improper standard of review, resulting in the wrongful reinstatement of the purportedly erroneous manifestation determination. (*Id.* ¶¶ 70-81). Thus, by this claim, plaintiff challenges the outcome of the administrative proceeding on the merits. In other words, the fourth claim is an appeal pursuant to the existing appeal procedure from the substance of the administrative decision reached, as opposed to the first three claims, which constitute challenges to the appeal procedure itself.

## IV.    PROCEEDINGS IN THIS COURT

After removal, defendants moved for dismissal of the case for lack of jurisdiction based on mootness because plaintiff no longer resides in or plans to return to Granville County. (Def.'s Mot. to Dismiss (D.E. 10)). The court, allowing the motion in part, dismissed as moot L.K.'s third claim for a declaratory judgment and his request for readmission to his former school. (9 June 2008 Order (D.E. 25) 7).[2] The court left in the case plaintiff's first and second claims, including the contention underlying them that North Carolina's two-tiered system of review violates the IDEA. (*See, e.g.,* *id.* 5 ("[T]he court concludes that it may adjudicate plaintiff's claims that defendants violated the IDEA . . . ."), 7).[3] The fourth claim also survived the court's ruling. (9 June 2008 Order 7). The court did not reach the issue of whether the proper defendants had been named, including specifically whether the Granville Board should be joined as a defendant. (*Id.* 1 n.1).

---

[2] Pursuant to these claims, the prayer for relief in the complaint requested the court to: (1) vacate the SRO's decision; (2) reinstate the ALJ's decision; (3) order L.K.'s immediate admission to his former school; (4) expunge L.K.'s long-term suspension from his disciplinary records; (5) declare that North Carlina's second tier of administrative review violates the IDEA; and (6) retain jurisdiction over the matter, after ordering L.K. back to the school, to ensure L.K.'s admission to the school. (Compl. 17-18 ¶¶ 1-6).

[3] Defendants argue incorrectly in their joinder memorandum and other filings that the court dismissed this statutory challenge by plaintiff. (*See, e.g.,* Defs.' Joinder Mot. 2).

6

The parties subsequently filed cross-motions (D.E. 30, 32) for summary judgment. Because the motions "focus[ed] so heavily on issues of standing and joinder, and in view of the possibility that some of plaintiff's claims may be dismissed and/or an additional party may be joined to the action," the court denied both motions without prejudice, adopting a memorandum and recommendation (D.E. 51) on them. (1 Oct. 2009 Order (D.E. 57) 6). The court also set a deadline for the filing of any motions challenging the court's jurisdiction, required the parties to file memoranda stating their position on joinder of the Granville Board, deferred the filing of dispositive motions on non-jurisdictional grounds pending proceedings on the jurisdictional and joinder issues, and ordered the filing of the administrative record. (*Id.* at 6-7 ¶¶ 2-6).

In compliance with this order, the administrative record was filed with the court (*see* Minute Entry after D.E. 58 and D.E. 82) and plaintiff filed his memoranda on dismissal and joinder now before the court. While defendants also made their instant filings in response to the court's order, they did not comply with the clear directive to limit their motion to jurisdictional issues, but seek relief on both jurisdictional and non-jurisdictional grounds. (*See* Defs.' Mot. 1 ¶¶ 1-3). The court is disregarding defendants' non-jurisdictional contentions without prejudice to their right to pursue them in accordance with further directives of the court.

## DISCUSSION

### I.   PLAINTIFF'S STANDING

#### A.   Applicable Legal Standards

Defendants state in their motion that they challenge the court's subject matter jurisdiction on the grounds that plaintiff's claims are moot and that plaintiff lacks standing. (Defs.' Mot. 1 ¶ 4). The motion and the prior briefs upon which they rely collectively cite Fed. R. Civ. P. 12(b)(1), 12(b)(6),

7

12(h)(3), and 56 as the rules under which they are proceeding. (*See, e.g., id.* 1; Defs' S.J. Support. Mem. (D.E. 31) 5, 13, 23, 26, 28, 29).

The court does not fully agree with defendants' characterization of their motion. The court disposed of defendants' challenge based on mootness in its June 2008 Order. (9 June 2008 Order 3-7; *see also* 1 Oct. 2009 Order 2). The court therefore deems defendants' motion to present solely the question of plaintiff's standing. In addition, motions challenging the court's subject matter jurisdiction and specifically standing are generally governed by Rule 12(b)(1), not the other rules cited by defendants. *Dash v. FirstPlus Home Loan Owner Trust 1996-2*, 248 F. Supp. 2d 489, 501 (M.D.N.C. 2003); *see also Tingley v. Beazer Homes Corp.*, No. 3:07cv176, 2008 WL 1902108, at *2 (W.D.N.C. 25 April 2008) ("As standing is a fundamental component of a court's subject-matter jurisdiction, a defendant may properly challenge a plaintiff's standing by way of a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.") (citations and quotations omitted); (18 Aug. 2009 Mem. & Rec. 6). The court therefore considers defendants to be proceeding under Rule 12(b)(1).

Turning to the substantive principles of standing, the jurisdiction of federal courts to entertain suits is limited by Article III of the United States Constitution to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl.1; *see also Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009). "'[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process,' and thus meet the requirements of Article III." *Bishop*, 575 F.3d at 423 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)). To meet these requirements and thereby establish standing, a plaintiff must show: "'(1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

8

speculative, that the injury will be redressed by a favorable decision.'" *Emery*, 432 F.3d at 298 (quoting *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)).

The requisite injury in fact exists if the plaintiff has suffered "'an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent.'" *Id.* (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.2000) (en banc)). The injury cannot be "'conjectural or hypothetical.'" *Id.* (quoting *Friends for Ferrell Parkway*, 282 F.3d at 320 (internal quotation marks omitted)). The traceability requirement is designed to ensure that the plaintiff's injury was likely caused by the challenged conduct of the defendant, not by the independent conduct of others not before the court. *Friends for Ferrell Parkway*, 282 F.3d at 320. The redressability element, of course, requires that it be likely that a favorable decision will remedy the plaintiff's injury. *Id.* The plaintiff bears the burden of establishing each element of the test for standing as the party invoking federal question jurisdiction. *Id.*

A court must grant a motion to dismiss for lack of subject matter jurisdiction "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "[T]he district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

With these principles in mind, the court turns to analysis of plaintiff's standing with respect to the first and second claims, and then the fourth claim.

9

**B. Plaintiff's Standing as to the First and Second Claims**

**1. Injury Requirement**

The allegations of the first and second claims clearly establish that the injury-in-fact requirement is met. The injury is the subjection of plaintiff to the purportedly unauthorized second state-level review under North Carolina law. This injury is not a mere abstraction; it resulted in reinstatement of the long-term suspension and the inclusion of this suspension in plaintiff's school record. The court's dismissal order recognized plaintiff to have suffered this alleged injury. (*See* 9 June 2008 Order 5-6 & n.6).

**2. Traceability Requirement**

Although defendants acknowledge that an SEA may be held liable when an LEA fails to comply with the IDEA, *Gadsby v. Grasmick*, 109 F.3d 940, 952-53 (4th Cir. 1997) (holding that "an SEA may be held responsible if it fails to comply with its duty to assure that [the] IDEA's substantive requirements are implemented"); *see also Carnwath v. Grasmick*, 115 F. Supp. 2d 577, 580 (D. Md. 2000) ("The SEA may incur liability for a failure to establish adequate procedures where the state's procedures do not comport with due process requirements."), they deny that the injury alleged in the first and second claims resulted from their actions and is fairly traceable to them. The court disagrees.

The IDEA placed on defendants the responsibility to develop and implement the IDEA statutory scheme for North Carolina. *See* 20 U.S.C. § 1412(a)(11)(A)(i). As the IDEA states, "[t]he [SEA] is responsible for ensuring that . . . the requirements of [the IDEA] are met." *Id.* North Carolina law also placed this responsibility on defendants. *See* N.C. Gen. Stat. § 115C-107.2 (a)(1), (f) (stating, among other things, that "the State Board shall develop any plans that meet the criteria of IDEA and are required to be submitted to the United States Department of Education"); 16 N.C.

10

Admin. Code 6H.0102 (stating that the Department of Public Instruction "administers in accordance with applicable federal regulations such federal education programs as are authorized by Congress and accepted by the [State Board of Education]"). Correspondence in the record between the Department and the U.S. Office of Special Educational Programs ("OSEP") in 1989 and 1990 confirms the Department's actual direct involvement in the development of the current two-tier review scheme. (*See* 29 Sep. 1989 letter from Robert Davila, Assistant Sec'y, OSEP, to Bob Etheridge, then Superintendent, N.C. Dep't of Pub. Instruction (D.E. 31-2) (discussing North Carolina's proposal to address due process issues identified during OSEP's review of North Carolina's state plan); 12 Sep. 1990 letter from Davila to Etheridge (D.E. 31-3) (approving the new two-tiered review scheme)).

Where, as here, the challenge in a suit under 20 U.S.C. § 1415 is to the state's statutory scheme implementing the IDEA, the courts have repeatedly held that the state's SEA is a proper party. *See Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, No. 5:06-CV-139, 2007 WL 2219352, at *12 (W.D. Mich. 27 Jul. 2007) ("An SEA is a proper party only if the action involves claims of 'systematic' violations of the IDEA. A claim is 'systematic' if it 'implicates the integrity or reliability of the IDEA dispute resolution procedures,' or 'requires restructuring the education system itself.'" (quoting *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)); *Bitsilly ex rel. Denet-Yazzie v. Bureau of Indian Affairs*, 253 F. Supp. 2d 1257, 1271 (D.N.M. 2003) ("Many courts have interpreted the IDEA as allowing parents to sue SEAs, especially when the parents allege a systemic violation or a failure to monitor type of claim."); *Moubry v. Kreb*, 58 F. Supp. 2d 1041, 1049 (D. Minn. 1999) (holding that the state department of education is a proper party when the issue involves a state statute or rule, *e.g.*, where there is a conflict between a state's laws implementing the

11

IDEA and the IDEA). The court concludes that the injury alleged in the first and second claims is fairly traceable to defendants, in satisfaction of the second standing requirement.

### 3.    Redressability Requirement

The final standing requirement of redressability focuses, here, on whether a decision favorable to plaintiff is likely to result in expungement of the long-term suspension from his school record, the one request for relief by plaintiff remaining in the case. Defendants deny that they have authority to order a local school system to amend its student records or otherwise effect the expungement. They point out, correctly, that the official record of each student in North Carolina public school is maintained in the files of the appropriate school. *See* N.C. Gen Stat. § 155C-402(a). But they have not cited, nor has the court found, any authorities establishing that defendants could not require the Granville Board to expunge the long-term suspension from plaintiff's record or take other action to effect the expungement if the court were to order it. To the contrary, a review of relevant statutes that grant authority to and impose duties upon defendants indicates that they would have the capability to carry out an order by this court for expungement.

For example, the State Board is tasked with the "[g]eneral supervision and administration of the free public school system." N.C. Gen. Stat. § 115C-12; *see also* N.C. State Board Policy TCS-C-011 (3 Sep. 2009) (providing that the State Board "shall set all policies of the state of North Carolina regarding public education and shall supervise and administer the free public school system"). The superintendent of the Department is similarly tasked with managing "all those matters relating the supervision and administration of the public school system that the State Board delegates." N.C. Gen. Stat. § 115C-21 (a)(5).

12

In addition to this general authority, the State Board is granted specific authority over school records and student data in a variety of contexts. For instance, the State Board is required by statute to "develop and implement a Uniform Education Reporting System that shall include requirements for collecting, processing, and reporting fiscal, personnel, and student data, by means of electronic transfer of data files from local computers to the State Computer Center through the State Communications Network." N.C. Gen. Stat. § 115C-12; *see also* State Board Policy TCS-C-018 (1 June 2006) (providing that the Department "has the legal and ethical responsibility to use and disseminate appropriate information as one of its most important priorities," which includes the oversight of NCWISE, North Carolina's system for student accounting and the collection and reporting of student information). A more specific example of the State Board's responsibilities over student information is the statutory mandate to "plan and implement an exchange of information between the public schools and the institutions of higher education in the State" and to "require local boards of education to provide to the parents of children at a school all information except for confidential information received about that school from institutions of higher education." N.C. Gen. Stat. § 115C-12 (18)(c). The Department of Public Instruction has a related obligation to "generate . . . standardized transcripts in an automated format for applicants to higher education institutions" to be used by and the local school administrative units. *Id.* § 116-11(10a)(d).

This broad authority over student records is complemented by the State Board's direct responsibility for ensuring compliance of LEAs with the IDEA. The State Board is expressly tasked with monitoring LEAs for compliance, *see id.* § 115C-107.4(a), and implementing a system of incentives and sanctions to promote compliance, including providing sanctions for substantial noncompliance, *id.* § 115C-107.4(b). Each LEA has a corresponding duty to comply with the IDEA

13

and the State Board's rules implementing the IDEA. *See id.* § 115C-107.6(a). In light of this statutory scheme of enforcement, it is not plausible that defendants would be precluded from ordering an LEA to expunge from a student's record a disciplinary ruling rendered in violation of the IDEA's procedural requirements or otherwise effecting its expungement.

Nevertheless, expungement of plaintiff's record pursuant to a favorable judgment does not necessarily require the defendants to take any action. Pursuant to N.C. Gen. Stat. § 115C-109.3(c), a student with a disability can add written explanations or clarifications to his record or request that his record be expunged of incorrect information. A judgment favorable to plaintiff, reversing the SRO's decision and reinstituting the ALJ's decision, would justify a request by plaintiff to either supplement or amend his record pursuant to this statute.

The court concludes that the final requirement for standing is met with respect to the first and second claims. Plaintiff therefore has standing and the court subject matter jurisdiction with respect to these claims. It will accordingly be recommended that defendants' motion be denied as to the first and second claims.

### C.  Plaintiff's Standing as to the Fourth Claim

#### 1.  Injury Requirement

The court finds that the allegations of the fourth claim satisfy the injury-in-fact requirement. The alleged injury is the SRO's application of an improper standard of review, resulting in reinstitution of the allegedly erroneous manifestation determination upholding the long-term suspension and the inclusion of the suspension in plaintiff's school record. Again, the court's dismissal order recognized plaintiff to have suffered this alleged injury. (*See* 9 June 2008 Order 5-6 & n.6).

14

## 2. Traceability Requirement

Plaintiff contends that plaintiff's injury as alleged in the fourth claim is fairly traceable to defendants and that the second standing requirement is therefore met as to this claim. The court disagrees.

Contrary to plaintiff's contention, the SRO was not acting as an agent of defendants. Instead, both the IDEA and the North Carolina statute implementing the IDEA expressly require that the SRO review be "impartial" and that the review result in an "independent decision." 20 U.S.C. § 1415(g)(2); N.C. Gen. Stat. § 115C-109.9(b). The North Carolina statute further provides that the SRO appointed to conduct the review cannot be an employee of the State Board, the Department, or the local educational agency involved with the subject child. N.C. Gen. Stat. § 115C-109.9(b). Moreover, the courts recognize that an SEA is not the proper party to defend against mistakes of law by an independent, impartial hearing officer, as here. *Lillibask*, 117 F. Supp. 2d, 182, 198 (D. Conn. 2000) ("[The SEA is] not liable for the decision, even though erroneous, on the part of an independent, impartial hearing officer. Liability may not flow from decisions over which State Defendants have no control and can not legally influence."); *Carnwath*, 115 F. Supp. 2d at 581 ("[T]he ALJ's mistakes of law do not impute liability to the [SEA]."); *Fritschle v. Andes*, 25 F. Supp. 2d 699, 704 (D. Md. 1998) (recognizing that a SEA is not responsible, and therefore not liable, for alleged IDEA violations based on independent actions of an impartial ALJ), *disapproved on other grounds*, 216 F.3d 380, 385 (4th Cir. 2000).

Nor has it been shown that defendants are in any way responsible for the manifestation determination that the SRO's ruling reinstituted and that imposed the long-term suspension at issue. The Granville Board is the entity responsible for the manifestation determination and, appropriately,

15

the party that defended it in the administrative review process. But plaintiff has steadfastly declined to amend his complaint to include the Granville Board, notwithstanding express recognition of the opportunity for such amendment in the court's rulings. (*See, e.g.,* 9 June 2008 Order 1 n.1; Mem. & Rec. 3, 10).

The court concludes that the alleged failure by the SRO to apply the correct standard of review is not an action fairly traceable to defendants. Because this requirement has not been met, plaintiff has failed to show that he has standing with respect to the fourth claim and thereby that the court has subject matter jurisdiction over it. It will therefore be recommended that defendants' motion be allowed as to plaintiff's fourth claim and that this claim be dismissed. This determination moots the issue of compliance of the fourth claim with the redressability requirement of standing, and the court declines to address it.

## II.    JOINDER OF THE GRANVILLE BOARD

### A.    Applicable Legal Standards

Having determined that it has subject matter jurisdiction over plaintiff's first and second claims, the court now addresses whether the Granville Board must be joined. The court may properly consider this issue *sua sponte*. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 128 S. Ct. 2180, 2188 (2008). If warranted, the court may also order the filing of a new complaint reflecting the joinder of the Granville Board. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Craddock v. Apogee Coal Co.*, 166 Fed. Appx. 679, 682 (4th Cir. 2006) (recognizing the district court *sua sponte* joined, as necessary, a third party and ordered the plaintiff to file a new complaint).

16

The potential joinder of the Granville Board is governed by Rule 19. It provides that a person who is subject to service of process and whose joinder will not defeat subject matter jurisdiction must be joined if either of two basic circumstances exist:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The focus of the complete relief requirement is: "(1) whether in the person's absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court, and (2) whether failure to join the absent party would compromise the public interest in avoiding repeated lawsuits on essentially the same subject matter." *Gateway Associates, Inc. v. Essex-Costello, Inc.*, 380 F. Supp. 1089, 1095 (N.D. Ill. 1974).

Rule 19 determinations are fact specific, and must be made on a case-by-case basis. *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968). In addition, Rule 19 "takes account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases. *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917 (4th Cir. 1999). "[T]he Rule 19 inquiry is a practical one that is committed to the sound discretion of the trial court . . . ." *Dickson v. Morrison*, No. 98-2446, 1999 WL 543230, at *6 (4th Cir. 27 Jul. 1999).

17

Here, there is no question that the Granville Board is subject to service of process and that its joinder would not deprive the court of subject matter jurisdiction. The issues presented by its potential joinder are whether the court can accord complete relief among the existing parties in its absence and whether it claims an interest relating to this action that may as a practical matter impair or impede its ability to protect the interest. The court turns now to an examination of each of these issues.

### B.     Analysis of the Granville Board's Joinder

#### 1.     Ability to Accord Complete Relief

Defendants contend that the court cannot accord complete relief in the absence of the Granville Board. The court disagrees.

For the reasons previously discussed, the court believes that it can effectuate the only relief recoverable by plaintiff on his remaining claims, namely, expungement of the long-term suspension from plaintiff's school record. Defendants do not, of course, assert any counterclaims, and the relief they seek (*i.e.*, dismissal of all of plaintiff's claims) can obviously be provided by the court in the absence of the Granville Board. Moreover, because expungement is the only remaining relief recoverable by plaintiff in the case, the Granville Board's absence does not present the prospect of repeated lawsuits on the same subject matter over which the court has jurisdiction. The court concludes that it can accord complete relief in the Granville Board's absence and therefore that its joinder is not required for that purpose.

#### 2.     The Granville Board's Interest

At first blush, it would appear that the Granville Board has an interest in this case that could be impeded or impaired if it were not joined. Specifically, its manifestation determination is presently

18

the controlling decision on the merits in this case and the relief plaintiff seeks would effectively overrule that determination by making the ALJ's decision the final decision in this case. Seemingly consistent with this perspective, courts hold that the local school district within which a student's school is located is generally deemed to be a real party in interest in suits challenging action by the local district under the IDEA. *See Guthrie v. Circle of Life*, 176 F. Supp. 2d 919, 922 (D. Minn. 2001) ("In general, when a parent brings an action on behalf of her child, challenging the provision of a free and appropriate education as required under the Act, the independent school district within which the child's school is located is considered a real party in interest to the action."); *see also Traverse Bay Area*, No. 5:06-CV-139, 2007 WL 2219352, at *12 ("Generally, in a case where a parent files a civil action under 20 U.S.C. § 1415(i)(2)(A), the independent school district within which the child's school is located is considered to be the real party in interest to the action."). Closer analysis reveals, however, that the Granville Board does not have an interest in this case that compels its joinder.

Among other reasons, the two claims recommended to be retained and not dismissed do not challenge the merits of the Granville Board's manifestation determination, but rather the two-tier statutory review process under North Carolina law. The Granville Board has no control over that statutory scheme and is obligated to follow it. Indeed, as discussed above, courts have consistently held that it is the SEA that is the proper party where, as here, the claims are of systemic violations of the IDEA, including claims that "implicate[] the integrity of the IDEA's dispute resolution procedures." *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001) (quoting *Mrs. M. v. Bridgeport Board of Educ.*, 96 F. Supp. 2d 124, 133 n.12 (D. Conn. 2000)). With respect to such systemic claims, the courts have held that LEAs do not have to be joined under Rule 19(a). *See New Jersey*

19

*Protection & Advocacy, Inc. v. New Jersey Dep't. of Educ.*, 563 F. Supp. 2d 474, 492 (D.N.J. 2008) (holding that school districts were not necessary parties in a suit seeking to have the court require the state department of education and the state board of education to implement policies and procedures that comply with IDEA); *Evans v. Evans*, 818 F. Supp. 1215, 1225-26 (N.D. Ind. 1993) (holding that the local schools were not necessary parties to an action against the state department of education challenging the legality of the state's procedures related to implementation of individualized educational programs under IDEA).

Furthermore, any interest the Granville Board may have in defending the manifestation determination and thereby the long-term suspension for the sake of the operation of its schools is negated by L.K.'s current residence outside North Carolina with no intention of returning. Nor would any ministerial responsibilities the Granville Board has with respect to plaintiff's school records provide it an interest compelling its joinder.

Moreover, despite the pendency of this case for a significant period and the Granville Board's likely awareness of it, the Granville Board has taken no action to intervene. *See Bitsilly*, 253 F. Supp. 2d at 1271-72 (holding that the local tribal schools were not indispensable parties in an action against the Bureau of Indian Affairs (serving the role of SEA) for failure to ensure compliance with the IDEA in part because there had been no indication that the local tribal schools had claimed an interest in the subject of the action). This fact tends to demonstrate that the Granville Board does not consider itself to have an interest relating to this case whose protection requires that it be joined.

Defendants assert that the Granville Board could be considered prejudiced by a ruling in plaintiff's favor on its challenge to the two-tier review procedure because such a ruling would effectively recognize the right to court appeal from an ALJ's decision whereas the Granville Board

20

never had that opportunity in this case. But this concern, to the extent it is deemed valid by the court, could be addressed by providing the Granville Board an opportunity to appeal the ALJ decision in accordance with the appeal procedure newly determined by the court to be lawful.

For this and the other reasons stated, the court concludes that the Granville Board does not claim an interest relating to the subject of this action whose protection would be impaired or impeded by disposing of the action in its absence. It will therefore be recommended that the Granville Board not be joined as a defendant pursuant to Rule 19.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the court enter an order providing that:

1.    defendants' renewed motion to dismiss (D.E. 62) shall be ALLOWED as to plaintiff's fourth claim and such claim shall be DISMISSED pursuant to Fed. R. Civ. P. 12(b)(1);

2.    defendants' motion shall otherwise be DENIED without prejudice to any non-jurisdictional contentions included therein;

3.    the Granville Board shall not be joined as a party defendant;

4.    the parties shall file any dispositive motions on non-jurisdictional grounds within 14 days after the court's ruling on this Memorandum and Recommendation;

5.    any party filing a motion for summary judgment shall, in the motion, the supporting memorandum, or an attachment thereto, set out the specific undisputed material facts upon which the party relies and provide a specific citation to the administrative record, stipulation, or other source for each such fact; and

6.    the court encourages the parties to stipulate to undisputed facts for the purposes of any dispositive motions that are filed to facilitate proceedings on any such motions.

21

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This 23rd day of June 2010.

James E. Gates
United States Magistrate Judge

22