IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-85-BR

| | | |
|---|---|---|
| L.K., a Minor, by and through his surrogate parent, Melissa Henderson, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| NORTH CAROLINA STATE BOARD OF EDUCATION and the NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This case comes before the court, in part, on the motion (D.E. 87) to dismiss by defendants North Carolina State Board of Education ("State Board") and the North Carolina Department of Public Instruction ("Department") (collectively "defendants") for lack of subject matter jurisdiction on the grounds of mootness pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff L.K., a minor, through his maternal aunt and surrogate parent ("L.K." or "plaintiff") opposes the motion on its merits. Also before the court are the parties' cross-motions for summary judgment (D.E. 89 (defendants), D.E. 91 (plaintiff)) pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions have been fully briefed,[1] and the parties have filed a stipulation of facts (D.E. 86). The motions were referred to the undersigned for review and recommendation pursuant

---

[1] In support of their motion to dismiss, defendants filed a memorandum (D.E. 88) and two exhibits (D.E. 87-1, -2). In opposition, plaintiff filed a memorandum (D.E. 97). Defendants filed a reply memorandum (D.E. 98).

In support of their motion for summary judgment, defendants filed a memorandum (D.E. 90), two exhibits (D.E. 90-1, -2), and unreported cases (D.E. 90-3, -4). In opposition, plaintiff filed a memorandum (D.E. 96). Defendants filed a reply memorandum (D.E. 99) with one exhibit (99-1).

In support of his motion for summary judgment, plaintiff filed a memorandum (D.E. 92), two exhibits (D.E. 92-1, -3), and an unreported case (D.E. 92-3). In opposition, defendants filed a memorandum (D.E. 94).

to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendants' motion to dismiss be allowed, the case be dismissed, and the underlying administrative decisions be vacated. It will be further recommended that the parties' cross-motions for summary judgment be denied as moot.

## BACKGROUND

The material facts[2] follow. Shortly after L.K. enrolled in a Granville County public high school, the J.F. Webb High School ("Webb"), the principal recommended in September 2007 that he be suspended for a year for bringing a razor to school and other conduct. (Stip. ¶¶ 4, 6; Compl. (D.E. 1-2) ¶¶ 14, 21). L.K. had been found to have multiple disabilities and to be subject to the Individuals with Disabilities Education Act ("IDEA")[3], 20 U.S.C. §§ 1400, *et seq.* (Stip. ¶ 5; Compl. ¶¶ 7, 12, 13). Proceeding under the IDEA, the prescribed team of persons made the determination that L.K.'s behavior was not a manifestation of his disabilities and that the year-long suspension would be enforced. (Stip. ¶ 7; Compl. ¶¶ 22-26). A determination that L.K.'s conduct was a manifestation of his disabilities would have precluded the suspension. (Comp. ¶ 23).

In accordance with the North Carolina statutes implementing the IDEA, plaintiff sought review of this manifestation determination at an expedited due process hearing conducted by an administrative law judge ("ALJ") with the North Carolina Office of Administrative Hearings. (Stip. ¶ 8; Compl. ¶¶ 27-29). The ALJ reversed the manifestation determination (Stip. ¶ 9), and the

---

[2] For completeness, the court has included citations to the complaint with those to the stipulation of facts. Except as otherwise noted herein, the facts relevant to the court's review of the pending motions are undisputed.

[3] In 2005, the IDEA was generally amended by the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub.L. No. 108-446, 118 Stat. 2647 (3 Dec. 2004), which took effect on 1 July 2005. The statutory citations in this Memorandum and Recommendation ("M&R") refer to the IDEA as recodified by IDEIA.

Granville County Board of Education ("Granville Board") invoked the second tier of appeal under North Carolina law, review by a state review officer ("SRO") appointed by the Department. (Stip. ¶ 10; Compl. ¶¶ 38, 53, 59, 60). The SRO overruled the ALJ's decision and reinstated the suspension. (Stip. ¶ 11; Compl. ¶¶ 62, 69). At both tiers of the administrative appeal, plaintiff and the Granville Board were the only named parties. (Compl. ¶¶ 31, 53).

Plaintiff appealed the SRO's decision to state Superior Court, naming the State Board and the Department, and not the Granville Board, as defendants. (Stip. ¶ 12; Compl. 1 & ¶¶ 9-10). Defendants removed the case to this court. (Notice of Removal (D.E. 1-4); Stip. ¶ 12).

In the complaint, plaintiff alleged four causes of action: (1) violation of L.K.'s purported right under the IDEA to a final state-level manifestation determination on an expedited basis; (2) violation of L.K.'s purported right to have been returned to L.K.'s school and not to have been suspended in accordance with the ALJ's order; (3) L.K.'s purported entitlement to a declaratory judgment that the second tier of appeal under North Carolina law violates the IDEA; and (4) application by the SRO of an improper standard of review, resulting in an erroneous decision on the merits. (Compl. ¶¶ 70-81).

Following removal, defendants moved for dismissal for lack of jurisdiction on the grounds of mootness because L.K. no longer resides in North Carolina. (Defs.' 2 April 2008 Mot. to Dismiss (D.E. 10)). The court partially allowed the motion on these grounds and dismissed L.K.'s third cause of action and any claims for L.K.'s re-admission to Webb based on his absence from North Carolina. (9 June 2008 Order (D.E. 25) 7).[4] Defendants raised tardily, in their reply, the contention that the

---

[4] In his complaint, L.K. requested the court to: (1) vacate the HRO's decision; (2) reinstate the ALJ's decision that is favorable to L.K.; (3) order L.K.'s immediate admission to Webb; (4) expunge L.K.'s long-term suspension from his disciplinary records; (5) declare that North Carlina's second tier of administrative review violates the IDEA; (6)

3

Granville Board, rather than they, was the proper defendant, and the court therefore did not reach this issue, noting that any such defect could be cured by amendment of the complaint, which plaintiff never sought. (*Id.* 1 n.1).

Thereafter, the parties each filed motions for summary judgment (D.E. 30, 32). The court found that the motions raised, but did not adequately address, issues of plaintiff's standing and the Granville Board's joinder which, being jurisdictional in nature, needed to be resolved before consideration of the merits-based issues. The court therefore denied the motions without prejudice; set a schedule for motions challenging the court's subject matter jurisdiction and briefing of the Granville Board's joinder; and required the submission of the administrative record, which the court lacked. (1 Oct. 2009 Order (D.E. 57) 6 ¶¶ (1)-(5) (adopting with modifications 18 Aug. 2009 M&R (D.E. 51)).

On defendants' renewed dismissal motion filed pursuant to the court's order, the court found plaintiff had standing to pursue his first and second claims, which challenge the legality of the second-tier state-level review, but dismissed the plaintiff's fourth claim, which challenges the SRO's decision on its merits, for lack of standing. (16 Aug. 2010 Order (D.E. 85) (adopting 23 June 2010 M&R (D.E. 83)). It also determined that the Granville Board should not be joined and set a deadline for the filing of any dispositive motions on non-jurisdictional grounds. (*Id.* ¶¶ 3, 4). The parties filed their pending cross-motions for summary judgment pursuant to this directive.

---

retain jurisdiction over the matter, after ordering L.K. back to Webb, to ensure L.K.'s admission to Webb; and (7) award any further relief the court deems just and proper. (Compl., Prayer for Relief, 17-18).

4

Case 5:08-cv-00085-BR   Document 100   Filed 02/18/11   Page 4 of 20

As indicated, defendants also filed a motion to dismiss. The motion is based on the alleged expungement of plaintiff's long-term suspension from school records by the Granville Board on 12 July 2010.

## DEFENDANTS' DISMISSAL MOTION

The resolution of defendants' motion to dismiss will determine whether this court has jurisdiction to conduct further proceedings in this case, including consideration of the parties' cross-motions for summary judgment. The court will therefore first address the dismissal motion.

### I. APPLICABLE LEGAL PRINCIPLES

#### A. Doctrine of Mootness

The mootness doctrine has its roots in Article III, § 2 of the United Sates Constitution limiting the judicial power of the federal courts to actual, ongoing cases or controversies. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). The case or controversy requirement mandates that, throughout the lawsuit, the parties have a personal stake in the outcome of the case. *Id.* More specifically, at all stages of the case, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted). The case or controversy requirement thus bars the federal courts from rendering advisory opinions that do not affect the parties before it. *Id.*

A case becomes moot when it no longer meets one or more elements of the case or controversy requirement. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). As the Fourth Circuit has stated, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quotations and citations omitted); *see also Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010)

5

("We are always obliged to assure ourselves that a live dispute exists between the parties at all stages of litigation.").

Nevertheless, there are exceptions to the mootness doctrine. One is recognized where the conduct challenged by the plaintiff is "'capable of repetition, yet evading review.'" *Honig v. Doe*, 484 U.S. 305, 319 (1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This exception is "'limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Mid Atlantic Express, LLC v. Baltimore County, Md.*, __ F.3d __, No. 09-2234, 2011 WL 52454, at *2 (4th Cir. 7 Jan. 2011) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). The exception is applied to only "exceptional situations." *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007).

Courts have also declined to find a case moot when a party voluntarily ceases an illegal activity to avoid an unfavorable ruling. *See, e.g., United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953). There are two elements to this exception: (1) the defendant voluntarily ceases the alleged illegal activity and (2) there is a reasonable expectation that the wrong will be repeated. *Id.* As to the second requirement, to avoid application of the exception, the defendant has the heavy burden of showing that "there is no reasonable expectation that the wrong will be repeated." *Id.* at 633.

### B. Standard of Review for Mootness

Because "the doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction," *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006), the appropriate means for challenging the mootness of a case is a motion under Rule 12(b)(1). *See Friends of Animals v.*

*Salazar*, 670 F. Supp. 2d 7, 11 (D.D.C. 2009) (holding that "[a] motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1)"). The burden of showing subject matter jurisdiction on a Rule 12(b)(1) motion rests with the plaintiff, as the party invoking it. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two different types of challenges a Rule 12(b)(1) motion may bring. *North Carolina Motorcoach Ass'n v. Guilford County Bd. of Educ.*, 315 F. Supp. 2d 784, 790 (M.D.N.C. 2004) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In one, the defendant contends that the complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Id.* On such a motion, the facts alleged in the complaint are deemed true, and the court is normally limited to the allegations in the complaint as on a Rule 12(b)(6) motion, although it may also consider matters of public record the parties do not dispute and certain other materials. *Id.*; *S.N. v. Old Bridge Tp. Bd. of Educ.*, Civ. Act. No. 04-517 (SRC), 2006 WL 3333138, at *2 n.2 (D.N.J. 15 Nov. 2006). Defendants' initial Rule 12(b)(1) motion was of this type. (*See* 9 June 2008 Order 3-4).

In the other type of Rule 12(b)(1) motion, the defendant challenges the factual basis for subject matter jurisdiction. *See North Carolina Motorcoach Ass'n*, 315 F. Supp. 2d at 784. In this event, the district court treats the allegations of the pleadings as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). The district court employs the standard applicable to a motion for summary judgment whereby the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id.* "The moving party should prevail only if the material jurisdictional facts are

7

not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* The Rule 12(b)(1) motion presently before the court is this second type of motion.

### C. Vacatur Based on Mootness

A finding of mootness generally results not only in dismissal of the pending case, but also vacatur of the decisions below that were subject to review. *See, e.g., Alvarez v. Smith*, __ U.S. __, 130 S.Ct. 576, 581 (2009); *Norfolk S.*, 608 F.3d at 161 ("The customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment."); *Mellen v. Bunting*, 327 F.3d 355, 364 (4th Cir. 2003) ("If a claim becomes moot after the entry of a district court's final judgment and prior to the completion of appellate review, we generally vacate the judgment . . . ."). Vacatur is an equitable tradition that "'clears the path for future relitigation of the issues between the parties,' preserving 'the rights of all parties,' while prejudicing none 'by a decision which . . . was only preliminary.'" *Alvarez*, 130 S. Ct. at 581 (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)). Vacatur thus recognizes that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mrtg. Co. v. Bonner Mall P'ship.*, 513 U.S. 18, 25 (1994).

But the tradition of vacatur is limited to cases "where mootness has occurred through happenstance, rather than through the voluntary action [*e.g.*, settlement] of the losing party." *Mellen*, 327 F.3d at 364. As the Supreme Court has stated, "[w]here mootness results from settlement rather than happenstance, the losing party has voluntarily forfeited his legal remedy . . . [and] thereby surrender[ed] his claim to the equitable remedy of vacatur." *Alvarez*, 130 S. Ct. at 581 (quoting *Bancorp.*, 513 U.S. at 25) (internal quotation marks omitted).

8

Vacatur in moot cases has been employed by not only the Supreme Court and courts of appeals, but also district courts sitting in an appellate capacity. *See, e.g., In re Carolina Park Associates*, No. 2:10-cv-1805-DCN, 2010 WL 3893628, at * 2 (D.S.C. 30 Sept. 2010) (holding that because a district court sits in an appellate capacity in bankruptcy cases, it may apply the equitable principle of vacatur on appeal to vacate bankruptcy court orders when case has become moot); *Van Alstyne Indep. Sch. Dist. v. Andre S.*, No. 4:09-CV-89, 2010 WL 715560, at *7 (E.D. Tex. 23 Feb. 2010); *see also* 28 U.S.C. § 2106.[5] The types of cases in which vacatur has been applied include IDEA appeals. *See Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 92 (2d Cir. 2005) (vacating portions of district court judgment in IDEA appeal found to have been mooted on appeal and remanding with instructions to dismiss the associated claims); *Van Alstyne Indep. Sch. Dist.*, 2010 WL 715560, at *7 (vacating hearing officer's decision under IDEA when appeal became moot).

## II. DISCUSSION

Plaintiff disputes that this case has been mooted by the purported expungement of his long-term suspension from his school records. He argues, first, that the requirements for mootness are not met and, alternatively, even if they were, the case would be excepted from the mootness doctrine. The court will address each of plaintiff's contentions in turn and, given its resolution of them, the issue of mootness-based vacatur of the administrative decisions underlying this case.

---

[5] This statute provides: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106.

A.  **Satisfaction of Mootness Requirements**

1.  **Evidence of Expungement**

Plaintiff challenges the purported mootness of this case on the initial grounds that the evidence of expungement filed by defendants is inadequate. The court disagrees.

The evidence consists of two documents. One is a single-page letter (D.E. 88-2), dated 12 July 2010, from outside counsel for the Granville Board, James E. Cross, Jr. ("Cross"), to State Board Chairman William C. Harrison ("Harrison"). The letter notes that L.K is neither a student in the Granville County schools nor a local resident and that this case will therefore not impact the Granville Board. It then indicates that the Granville Board is expunging the long-term suspension from L.K.'s file:

> Because of the above factors, our school administration has decided to expunge the file of [L.K.] as it pertains to this suspension from school in September 2007. This expunction of information is being made because we now deem the set of circumstances irrelevant to both [L.K.] and our school system.

(Cross Ltr.).

The other document is a four-paragraph affidavit by Harrison (D.E. 88-1) bearing the caption of this case. The affidavit authenticates the letter from Cross, which is attached to the affidavit.[6] (Harrison Aff. ¶¶ 2, 4). Harrison describes the letter as "informing me that the [Granville Board] has expunged the record of the above-referenced student [*i.e.*, L.K.] showing that the student had been suspended in the fall of 2007, which suspension is the focus of this case." (*Id.* ¶ 2). Harrison also describes the effect of the expungement:

---

[6] While Harrison states that the letter was from the Superintendent of Granville County Schools, the letter is in fact from the attorney representing the Granville Board.

10

> The expunction of the suspension from the official student record means that no record of the suspension exists to document the suspension. For all purposes educational, the record does not exist.

(*Id.* ¶ 3).

Plaintiff contends, in part, that this evidence should not be considered by the court because it goes beyond the pleadings and does not concern undisputed matters of public record. By this argument, plaintiff invokes the standard for Rule 12(b)(1) motions challenging the jurisdictional sufficiency of the allegations in the complaint. As indicated, the instant motion is not of this type, but rather challenges the factual basis for jurisdiction. On this latter type of motion, the allegations in the pleadings are treated as evidence and the court may properly consider other evidence. This challenge by plaintiff is therefore meritless.

Plaintiff also argues that the evidence fails to establish expungement because it does not address the SRO decision. The apparent notion is that the SRO's decision is tantamount to a portion of plaintiff's official school record such that his record will continue to show the suspension unless and until the decision is vacated. The Harrison affidavit states, however, that "[t]he expungement of the suspension from the official student record means that no record of the suspension exists to document the suspension." (Harrison Aff. ¶ 3). Plaintiff asserts no evidentiary objections to this statement and understandably so. It is sworn to by Harrison, and his position and the Cross letter substantiate his competency to make the statement.

Plaintiff also has not offered any evidence contradicting this statement. If there truly were an issue of the fact or completeness of the expungement from plaintiff's official record, it is difficult to believe that plaintiff would not have adduced some evidence of it. He has also presented no legal authority supporting his position.

Plaintiff has therefore failed to create a genuine issue of material fact on whether the suspension was completely expunged from his official school record. The court finds that it was. The court accordingly rejects plaintiff's first challenge to application of the mootness doctrine.

### 2. Additional Relief

Plaintiff contends that, notwithstanding any expungement, the case is not moot because he continues to be harmed by the SRO decision's still standing as the final determination in the state proceedings. It, of course, found his conduct not to be a manifestation of his disability. He claims that he is entitled to pursue his argument that the SRO's decision is unlawful as the product of an illegal second-tier state-level review. Again, the court finds plaintiff's contention to be without merit.

As the court has already found, expungement of the long-term suspension is the sole remaining relief recoverable by plaintiff on his claims. (23 June 2010 M&R 12, 18 (unobjected to), adopted without modification by 16 Aug. 2010 Order 1). Plaintiff himself has also characterized expungement of his official record as the sole remaining remedy available to him. (*See, e.g.*, Pl.'s Resp. re Dismissal Mot. & Joinder (D.E. 65) 9 ("The only question that appears to remain is whether these particular Defendants can effect the requested remedy . . . . to expunge L.K.'s record of the decision reached as a result of an illegal second-tier state-level administrative review."); Pl.'s Mem. re Joinder (D.E. 64) 5 ("[T]he only surviving remedy initially sought by L.K. is that his record be corrected to reflect the holding and findings of the only valid state-level decision in this case, that of the [ALJ].").

Given the expungement, further proceedings in this case would be advisory in nature. They could not result in an award to plaintiff of any relief on his claims beyond what he has already received. The mootness doctrine precludes such advisory opinions.

12

Contrary to plaintiff's contention, he does not have a separate right to a ruling on his second-tier argument, detached from relief the court could award him on his claims. "A party does not have a property interest in a judicial opinion." *John T. v. Delaware County Intermediate Unit*, No. CIV. A. 98-5781, 2001 WL 1391500, at *3 (E.D. Pa. 7 Nov. 2001) (citing *Bancorp*, 513 U.S. at 26). As the Fourth Circuit has stated, when a plaintiff's "personal stake in an outcome has disappeared," "federal courts do not sit simply to bestow vindication in a vacuum." *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986).

Plaintiff seems to seek a ruling on its second-tier argument as a surrogate for a declaratory ruling on that issue. But the court has long ago dismissed his claim for such a declaratory ruling. (*See* 9 June 2008 Order 7 (dismissing plaintiff's third cause of action)).

The fact that plaintiff is not entitled to pursue his challenge to the SRO's decision does not mean that the SRO's decision must stand. As discussed, the equitable tradition of vacatur provides the court a means of addressing potential inequity that can result from the premature termination of judicial review through mootness.

The court concludes that as a result of the expungement of the long-term suspension from his record plaintiff has no remaining claims for relief. The case therefore comes within the mootness doctrine, absent an applicable exception.

### B. Mootness Exceptions

Plaintiff, of course, argues that exceptions to the mootness doctrine are applicable, to the extent the case is otherwise deemed to come within the doctrine. The court will review each of his contentions in turn below.

13

1. **Voluntary Cessation of Illegal Conduct**

Plaintiff contends that the voluntary cessation exception applies because "defendants' decision to expunge the plaintiff's disciplinary record, soon after receiving a determination from this Court allowing the case to proceed on the merits and indicating that state-level hearings can only be appealed to the judiciary, is a tactic designed to prevent this Court from deciding on the vital issue at hand." (Pl.'s Mem. re Dismissal 9-10). Defendants respond that this exception does not apply here because it was not they but the Granville Board that expunged the record.

Defendants are correct. The Granville Board is not a party to this action, and the court determined in its 18 August 2010 Order that the Granville Board did not have to be joined. (18 Aug. 2010 Order 1 ¶ 3). Plaintiff has offered no evidence establishing that the expungement was somehow effectuated by defendants.[7] The evidence offered by defendants indicates to the contrary. The Cross letter, from the Granville Board's counsel, states that "*our school administration* has decided to expunge the file of [L.K.] as it pertain to his suspension from school in September of 2007. . . . . because *we* now deem the set of circumstances irrelevant to both [L.K.] and our school system." (Cross Ltr.) (emphasis added). Thus, plaintiff has not shown the voluntary cessation of conduct by defendants necessary to bring this case within the voluntary-cessation mootness exception.

Even were the court to conclude that the expungement of the record was an action taken by or otherwise attributable to defendants, plaintiff has not shown that he meets the second requirement of the exception: that the "wrong will be repeated" against him. *See W.T. Grant Co.*, 345 U.S. at

---

[7] The court has recognized that defendants would have the ability to effect an expungement of the type at issue. (*See* 23 June 2010 M&R 14 ("[I]t is not plausible that defendants would be precluded from ordering an LEA [*e.g.*, local educational agency such as the Granville Board] to expunge from a student's record a disciplinary ruling rendered in violation of the IDEA's procedural requirements or otherwise effecting its expungement.")).

633. The parties have never disputed that L.K. moved to and appears to still reside in the State of New Jersey. (*See, e.g.*, Pl.'s Mem. re Dismissal 4 (stating that plaintiff's move out of state is a fact that "was not disputed"); Defs.' Mem. re Dismissal 7 (stating that since his suspension, plaintiff "has never returned to the State [of North Carolina], and has dropped out of school entirely in New Jersey")). Plaintiff has offered no evidence that he intends to return to North Carolina and attend school in this State. In light of these circumstances, the court cannot conclude that there is a reasonable expectation that plaintiff would again be subjected to the allegedly unlawful second tier of review in an IDEA appeal.

### 2. "Capable of Repetition, Yet Evading Review"

Plaintiff also contends that the circumstances fall within the exception for cases that are "capable of repetition, yet evading review." As noted above, for this exception to apply, it must be shown that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Mid Atlantic Express*, __ F.3d __, 2011 WL 52454, at *2.

As to the first requirement, plaintiff argues that an IDEA appeal, in some circumstances, may not be resolved before the expiration of a challenged educational action or plan, thereby repeatedly evading review. *See, e.g., Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1041 (5th Cir. 1989); *Van Alstyne*, 2010 WL 715560, at *4 (finding evading review prong satisfied in IDEA appeal, but not repetition prong). But the court need not decide this question. Its determination that there is not a reasonable expectation that plaintiff would again be subjected to the same action he has challenged in this case precludes plaintiff from satisfying the second requirement of this exception.

The court declines plaintiff's invitation, for lack of adequate legal authority, to modify this second prong of the exception by dropping the requirement that the same complaining party be the one who would be subjected to the same action again. The dissenting opinion on which plaintiff himself, in part, relies states that "[a]rguably those cases [dispensing with this requirement] have been limited to their facts, or to the narrow areas of abortion and election rights, by our more recent insistence that, at least in the absence of a class action, the capable of repetition doctrine applies only where there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Honig*, 484 U.S. at 335-36 (Scalia, J., dissenting) (internal quotation marks omitted). The court concludes that plaintiff has failed to show that this case comes within the "capable of repetition, yet evading review" exception to the mootness doctrine.

### 3. Matter of Public Importance

Plaintiff attempts to have the court except this case from mootness on the grounds that it addresses a "matter of public importance." (Pl.'s Mem. re Dismissal 13). However, the court agrees with defendants that plaintiff has failed to cite, and the court cannot find, definitive authority in support of this proposed exception. Moreover, the notion of excepting from mootness matters based simply on their public importance would represent an expansive approach to federal jurisdiction, in seeming contravention of the broad principle that federal jurisdiction is to be narrowly construed. The court concludes that plaintiff's argument is without merit.

For this and the other reasons stated, the court concludes that no exceptions apply to take this case outside the ambit of the mootness doctrine. The case should accordingly be dismissed as moot.

## C. Vacatur

The question now becomes whether the SRO's decision and possibly the other state decisions below should be vacated pursuant to the equitable tradition of vacatur. The court finds that they should be.

The equities certainly weigh in favor of vacatur. By depriving the SRO's decision of legal effect, vacatur would address plaintiff's concern that that decision is still somehow harming him.

In addition, plaintiff has litigated for an extended period, almost three years, in pursuit, at least in part, of judicial review of the legality of the second-tier review, which produced the SRO's decision, that he will not now receive. Moreover, the fact that the Granville Board based its decision to expunge plaintiff's record to a significant degree on his move to New Jersey suggests that the expungement could have come much earlier. Thus, the time that plaintiff has had to litigate in pursuit of the review has arguably been unnecessarily prolonged. Fairness dictates that plaintiff not be left to abide the SRO's decision notwithstanding his prolonged but ultimately frustrated efforts to obtain review of the process that produced it.

The possible motivation of the Granville Board in expunging plaintiff's record when it did is also relevant. To be sure, there is no direct evidence that the Granville Board expunged plaintiff's record to preclude review of the second-tier issue. The Cross letter indicates that the Granville Board made the decision for other reasons. (*See* Cross Ltr.). Nevertheless, the timing of the Granville Board's decision is consistent with an intent to preclude review of the second-tier issue. It came on 12 July 2010, less than three weeks after the 23 June 2010 Memorandum and Recommendation finding that plaintiff had standing to pursue his claims challenging the second-tier state-level review. (*See* 23 June 2010 M&R 10-14). To the extent that the expungement was intended to preclude this

17

court's consideration of this issue, equity favors vacatur of the SRO's decision as the product of the second-tier state-level review.

The court is aware that the tradition of vacatur applies where the case is mooted by happenstance, rather than through settlement or other certain voluntary acts of the parties. The court finds no circumstances here precluding vacatur.

The act rendering the case moot—the expungement of plaintiff's record—was obviously not within his control. Nor is there any indication that the expungement came as part of an agreement with plaintiff to settle the case.

Vacatur should not be limited to the SRO' decision, however. Vacatur of that decision would leave in place the decision of the ALJ reversing the manifestation determination that plaintiff's conduct was not a manifestation of his disability. Just as equity mandates that the SRO's decision not stand, it requires that the ALJ's decision and the manifestation determination be vacated. Vacatur of all three state decisions would preserve all the rights of the parties while prejudicing none with a decision that was only preliminary. *See Alvarez*, 130 S. Ct. at 581.

The court's conclusion that vacatur is appropriate finds support in the district court's decision in *Van Alstyne*. That case was an appeal by plaintiff school district from the decision of an Individualized Education Plan ("IEP") hearing officer upholding the position of the defendant parents of a student regarding the IEP for their child. The court found that the case was mooted when the parents moved their child to a different school district. *Van Alstyne*, 2010 WL 715560, at *6. The court went on to vacate the decision of the IEP hearing officer on the grounds that the equities favored doing so. *Id.* at *7. As in *Van Alystyne*, the equities here dictate that the state decisions below be vacated.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Because the court has determined that it lacks jurisdiction over this case under the doctrine of mootness, it cannot properly undertake consideration of the parties' cross-motions for summary judgment. It will therefore be recommended that these motions be denied as moot.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the court enter an order providing as follows:

1. Defendants' motion to dismiss (D.E. 87) is ALLOWED and this case is DISMISSED AS MOOT;

2. The manifestation determination of 19 September 2007, the ALJ's decision of 29 November 2007, and the decision of the SRO of 31 December 2007 are VACATED; and

3. The parties' cross-motions for summary judgment (D.E. 89, 91) are DENIED AS MOOT.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 18th day of February 2011.

James E. Gates
United States Magistrate Judge